# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD GOMEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>CORRECTIONAL OFFICER PENA, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:08-CV-00200-OWW-DLB PC<br><br>ORDER STRIKING PLAINTIFF'S SURREPLY (DOCS. 34, 35)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED (DOC. 30)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE DAYS |

**Findings And Recommendation**

**I.    Background**

Plaintiff Trinidad Gomez ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint against Defendants Tyner and Daguman for violation of the Eighth Amendment.

Pending before the Court is Defendants' motion for summary judgment, filed May 5, 2010. Doc. 30, Defs.' Mot. Summ. J. Plaintiff filed his opposition to Defendants' motion on May 27, 2010. Doc. 32, Pl.'s Opp'n.[1] Defendants filed their reply on June 1, 2010. Doc. 33, Defs.' Reply. The matter is submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on February 23, 2009. Doc. 14, Second Informational Order; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).

On June 21, 2010, Plaintiff filed a response to Defendants' reply, and a declaration in support. Docs. 34, 35. On June 29, 2010, Defendants filed objections to Plaintiff's filing. Plaintiff's response is construed as a surreply. Surreplies are generally not permitted under the Federal Rules of Civil Procedure or the Local Rules of this Court. *See* L.R. 230(l). The Court did not order any surreply to be filed. Accordingly, Plaintiff's surreply and supporting declaration, filed June 21, 2010, are HEREBY ORDERED stricken.

## II.     Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2] Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec.*

---

[2] The Federal Rules of Civil Procedure were updated effective December 1, 2010.

2

1 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

2     In attempting to establish the existence of this factual dispute, the opposing party may not
3 rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the
4 form of affidavits, and/or admissible discovery material, in support of its contention that the
5 dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must
6 demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
7 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty
8 Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.
9 Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the
10 dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
11 nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v.
12 Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

13     In the endeavor to establish the existence of a factual dispute, the opposing party need not
14 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
15 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
16 trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
17 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
18 *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963
19 amendments).

20     In resolving a motion for summary judgment, the court examines the pleadings,
21 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
22 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477
23 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the
24 court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United
25 States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not
26 drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from
27 which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-
28 45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

### III.     Undisputed Facts[3]

Plaintiff is an inmate who, at all times relevant to his complaint, was incarcerated at California State Prison, Corcoran (Corcoran). He claims that he slipped and fell in his prison cell in Building 1 of Corcoran on June 24, 2006, injuring his neck and upper back. He suffered chronic low back pain prior to this slip and fall as a result of a gunshot wound that occurred in 2002 or 2003.

Plaintiff claimed that he hurt his neck when he slipped and fell in his prison cell on June 24, 2006. He further claimed that his neck injury was examined by a medical technical assistant (MTA) at the prison on June 24, 2006 and that he sought additional treatment from a registered nurse (RN) on June 26, 2006 where he received medication. He received medical treatment for neck pain from a Doctor Reynolds on June 24, 2006, who prescribed 600 mg of Motrin to him and told him to return for further medical treatment on June 26, 2006. Doctor Reynolds chart note does not reference any slip and fall injury that occurred that day, despite the fact that Doctor Reynolds' appointment occurred at 8:00 a.m. and Plaintiff claims to have been injured at 6:30 a.m. Plaintiff was examined by RN Melendez on June 27, 2006. Neither Defendants RN Tyner nor Nurse Practitioner (NP) Daguman examined Plaintiff on June 27, 2006. However, Defendant

---

[3] All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless otherwise noted as a contention. Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial"). Plaintiff did not specifically list which undisputed facts he denies, though he does list his own version. Plaintiff's verified complaint may be treated as an opposing affidavit to the extent that it is verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985). Plaintiff's opposition is not verified and may not be treated as an opposing affidavit. The Court will consider only those facts and evidence that are relevant to resolving Defendants' motion for summary judgment.

4

Daguman did write prescriptions for medication after being informed of his symptoms and his complaints by RN Melendez.  Defendant Daguman prescribed Robaxin, told him to ice the affected areas daily for two days, and to return to the nurses' line at the prison on June 29, 2006.  Robaxin is a muscle relaxant and is generically known as Methocarbamol.  Plaintiff was initially prescribed Robaxin for 20 days (i.e., from June 27, 2006 through July 17, 2006).  Plaintiff did not receive medical treatment on June 29, 2006 because "the lawn was being mowed and cleaned and there was no movement on that day."

On July 7, 2006, Defendant Daguman examined him and allegedly found swelling in his neck and upper back, mild spasms in his neck and decreased range of motion in his shoulders.  Orthopedically, his examination did not indicate any broken bones or fractures, and no neurological deficits were apparent.  Defendant Daguman ordered x-rays of his upper, middle and lower back as well as his neck and increased a prescription for Ibuprofen from 600 mg to 800 mg.  His next prescription for Methocarbamol was written on July 18, 2006 by Defendant Daguman, and called for him to take this medication for 10 days.  The prescription was faxed to the Corcoran Pharmacy on July 19, 2006.  Defendant Daguman also wrote another prescription for 800 mg per day of Ibuprofen on July 15, 2006, and again issued for 800 mg of Ibuprofen on August 9, 2006.  Plaintiff claims that he received his x-ray examination when films were taken of his upper, mid and lower back on July 12, 2006, and further x-rays of his upper back and neck were taken on July 21, 2006.

The films taken of Plaintiff's cervical spine on July 21, 2006 were interpreted by a Doctor Deguchi on July 31, 2006.  All x-rays were negative for fractures and the films revealed that Plaintiff suffered minimal degenerative disc disease, minimal Grade 1 retrolysis at C4/C5, and narrowing of intervertebral disc spaces.  These findings were fairly normal degenerative changes in a person of Plaintiff's age (41 when this occurred).

His next examination with Defendant Daguman occurred on August 24, 2006.  Daguman noted that he continued to have mild spasms on the right side of his neck, and that he was walking slowly with limited range of motion.  She ordered an MRI of his Cervical Spine to rule out herniated discs and issued a "chrono" for his lower back that enabled Plaintiff to have a lower

5

bunk and extra pillow.

Plaintiff was also scheduled for another appointment with Defendant Daguman for September 24, 2006.  However, Defendant Daguman resigned from her position at Corcoran in September 2006, and moved to Alabama.  Defendant Daguman's involvement with Plaintiff's medical care consisted of two appointments, three prescriptions for medication, referrals for x-rays and MRI scans, and counseling regarding non-pharmacological pain management.  She did not extend his prescription for Methocarbamol after the second prescription expired in August 2006 because the pain and symptoms that Plaintiff experienced were chronic.  Narcotic pain medication is not recommended for patients with chronic pain and long-term use of medications such as Methocarbamol can cause very serious complications with patients livers and kidneys; thus she did not issue new prescriptions for Methocarbamol after his second prescription ended.

At all times, Defendant Daguman used her best medical judgment while providing treatment for Plaintiff.  She did not examine Plaintiff in September 2006 or any time after September 2006.  Plaintiff was never without some type of medication to help alleviate the pain that he complained of while he was in Defendant Daguman's care.  At all times, she prescribed the most appropriate medication for his condition while Plaintiff was in her care and his symptoms did not warrant any different medication or care.  Defendant Daguman counseled Plaintiff on nonpharmacological pain relief on both of his appointments with her and contends that all of her care met or exceeded the standard of care for treatment of the injuries that Plaintiff experienced.  The MRI of Plaintiff's cervical spine was not completed until December 6, 2006, more than two months after Defendant Daguman left Corcoran State Prison.  The findings of the MRI are consistent with a sprain/strain to the cervical spine (i.e., "reversal of the cervical lordosis") and degenerative disc disease.

Plaintiff further contends that all occasions where Defendant Tyner did not provide medical care occurred between May 24, 2006 and October 1, 2006. The only time that Defendant Tyner examined Plaintiff or otherwise provided any form of healthcare treatment to him during this time period occurred on August 21, 2006.

6

1    Defendant Tyner is neither a nurse practitioner nor a medical doctor and cannot write
2 prescriptions. The nurses' line at Corcoran State Prison is provided to inmates 5 days per week
3 and the purpose of the line is for a registered nurse or other healthcare provider to assess an
4 inmate's claims of injuries or illness. Nurses examine a patient, take his vital signs, review
5 medications that an inmate informs the nurse he is taking, and determine whether the illness or
6 injury requires immediate treatment or if the injury or illness can be addressed by a medical
7 doctor at a later date.  If an inmate complains of pain in his neck that has persisted for several
8 weeks (such as Plaintiff's complaints), his pain is considered chronic as opposed to acute.
9 Nurses' protocol for dealing with Chronic pain complaints arising from a sprain/strain are to
10 ensure that the inmate is seen by a medical doctor or physician's assistant within 24 hours of his
11 visit to the nurses' line.

12    Registered nurses at Corcoran State Prison may only provide over the counter
13 medications, such as aspirin, Ibuprofen, or Acetaminophen (Tylenol) to relieve pain. These
14 medications are known as "Keep on Person" medications at Corcoran.  Inmates are provided with
15 enough pills or tablets of these medications and are allowed to self-medicate, or take as directed.
16 Each of these medications has limits to the amounts that an inmate may take. For example, the
17 maximum dosage for Ibuprofen is 800 mg.

18    Plaintiff complained of pain in his neck on August 21, 2006. He indicated that this pain
19 began on June 24, 2006 and that he had been prescribed 800 mg of Ibuprofen by Defendant
20 Daguman.  Plaintiff further indicated that he was scheduled to see a doctor on August 22, 2006.
21 He requested that Defendant Tyner provide Methocarbamol to him for his pain.  Defendant Tyner
22 could not write a prescription to Plaintiff because she is not authorized to write prescriptions.
23 She did not offer to write any prescriptions to Plaintiff at any time.  She could not offer more
24 Ibuprofen to Plaintiff because he was already receiving the maximum dosage for this medication
25 prior to his August 21, 2006 examination.

26    Since Plaintiff's neck pain had lasted nearly two months as of August 21, 2006, his pain
27 was considered chronic.  Acute pain is defined as pain that has lasted only a short time, such as
28 within 48 hours.  Since Plaintiff's condition would be reassessed by another healthcare physician

7

within 24 hours, and since his pain was both chronic and non-emergent, Defendant Tyner could not offer Plaintiff any medical care that would not be provided at his pre-scheduled medical appointment. Since Plaintiff was already receiving medication for his pain and was already scheduled to see a doctor who could reassess his condition and prescribe new medication or further treatment, Defendant Tyner properly concluded that Plaintiff did not require additional medical care on August 21, 2006.  The medical decisions made by Defendant Tyner were appropriate and met or exceeded the standard of care for registered nurses. She used her best judgment and did not knowingly refuse to provide necessary medical treatment or refuse to provide medication to Plaintiff at any time.

## IV.   Analysis

### A.   Deliberate Indifference To A Serious Medical Need

The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

8

1188 (9th Cir. 2002)).

### B. Defendant Daguman

Defendant Daguman contends that she acted appropriately. Defendant examined Plaintiff on two occasions and prescribed medication for him on three occasions. Defs.' Mem. P. &. A. Support Mot. Summ. J. 13:10-23. She prescribed Robaxin and Ibuprofen, and recommended non-pharmacological pain treatment. *Id.* She contends that she did not withhold any medication from him and that there is no evidence of any medication that Plaintiff needed which Defendant Daguman did not prescribe.

Plaintiff contends in opposition that Defendant Daguman was obligated to conduct examinations of Plaintiff's condition and provide necessary and adequate treatment per health care policies and procedures at the prison. Pl.'s Opp'n 7.

Plaintiff's argument is unavailing. Defendant Daguman examined Plaintiff twice and prescribed medication for him three times. Defendant Daguman prescribed Robaxin and Ibuprofen, as well as recommended pain treatment. Plaintiff can point to no evidence that indicates Defendant Daguman's actions were anything other than sufficient. Plaintiff has at most a difference of opinion with Defendant Daguman as to the level of pain medication treatment he received, which is not sufficient for a cognizable Eighth Amendment claim. *See Toguchi*, 391 F.3d at 1058 (holding that a difference of opinion between physician and prisoner concerning appropriate course of treatment does not amount to deliberate indifference).

Plaintiff also makes various arguments concerning whether other doctors or correctional officers properly documented the incident that led to Plaintiff slipping and hurting himself. That argument is immaterial here, as it does not demonstrate how Defendant Daguman would know of and disregard a serious risk to Plaintiff's health. Such an argument tends to support Defendant Daguman's position, as it suggests that Defendant Daguman was not made aware of any serious injury to Plaintiff stemming from a fall prior to examining him.

Even construing all facts in light most favorable to the non-moving party, the Court does not find a dispute of material fact remains as to Defendant Daguman. Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Daguman.

**C.     Defendant Tyner**

Defendant Tyner contends that there is no evidence that she ignored Plaintiff's pain. Defs.' Mem. P. & A. Support Summ. J. 11:16-12:25.  Defendant contends that she examined him only once, on August 21, 2006. *Id.*  Defendant is a RN and had no authority to prescribe medication other than non-steroidal, anti-inflammatory drugs (NSAIDS) for patients with acute pain. *Id.*  On the day Plaintiff was seen by Defendant Tyner, Plaintiff was already prescribed 800 mg of Ibuprofen, the maximum amount available. *Id.*  Defendant Tyner thus could not prescribe further pain medication. *Id.*  Additionally, the pain that Plaintiff had on August 21, 2006 was not acute, but chronic, as it had persisted for nearly two months. *Id.*  Defendant Tyner contends that emergency medicine was not required for chronic pain. *Id.*  Additionally, Plaintiff was scheduled for a doctor's appointment on August 22, 2006. *Id.*  Thus, Defendant Tyner followed procedure and did not intervene. *Id.*  Plaintiff was later seen on August 26, 2006. *Id.*

Plaintiff contends in opposition that Defendant Tyner should have provided more treatment, and that she should have conducted examinations of Plaintiff's condition. Pl.'s Opp'n 7-8.  However, it is undisputed that Defendant Tyner lacked the authority to prescribe pain medication other than NSAIDS.  Additionally, Plaintiff was already prescribed 800 mg of Ibuprofen, which is the maximum amount that could be prescribed.  Even construing the facts in light most favorable to the non-moving party, there are no facts to support a cognizable Eighth Amendment claim against Defendant Tyner.  Accordingly, the Court recommends that summary judgment be granted in favor of Defendant Tyner.

**V.     Conclusion And Recommendation**

Accordingly, it is HEREBY ORDERED that Plaintiff's surreply and supporting declaration, filed June 21, 2010, are stricken.

Furthermore, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed May 5, 2010, should be GRANTED in full;
2. Judgment should be entered in favor of Defendants and against Plaintiff; and
3. The Clerk of Court be directed to close this action.

1  These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

   IT IS SO ORDERED.

   Dated: **January 13, 2011**                    /s/ **Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE